FILED IN CHAMBERS
U.S.D.C. Rome

OCT 01 2007

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

ALONZO ROBERT DUNN,  :
    Plaintiff,  :    CIVIL ACTION NO.
       :    1:07-CV-2007-RLV
    v.  :
       :    BIVENS ACTION
WARDEN ZENK, et al.,  :    28 U.S.C. § 1331
    Defendants.  :

## ORDER

The Plaintiff, an inmate at the Gwinnett County Detention Center in Lawrenceville, Georgia, has filed the instant action without paying the filing fee. For the purpose of dismissal only, leave to proceed in forma pauperis is hereby granted, and the matter is now before this Court for a 28 U.S.C. § 1915A frivolity screening.

## 28 U.S.C. § 1915A Frivolity Screening

Pursuant to 28 U.S.C. § 1915A, a federal court is required to conduct an initial screening of a prisoner complaint to determine whether the action (1) is frivolous or malicious, or fails to state a claim on which relief may be granted, or (2) seeks monetary relief against a defendant who is immune from such relief. A claim is frivolous when it appears from the face of the complaint that the factual allegations are "clearly baseless" or that the legal theories are "indisputably meritless." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). A complaint may be dismissed for

AO 72A
(Rev.8/82)

failure to state a claim when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Brower v. County of Inyo</u>, 489 U.S. 593, 597 (1989).

The Plaintiff has submitted the instant <u>pro se</u> civil action pursuant to 28 U.S.C. § 1331. In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), the Supreme Court held that the violation of an individual's constitutional rights by a federal official gives rise to a damages action in federal court, brought pursuant to 28 U.S.C. § 1331. "Because of the similarity in the causes of action, a <u>Bivens</u> case challenges the constitutionality of federal officials' conduct, while § 1983 challenges the constitutionality of state officials' conduct, we "generally apply § 1983 law to <u>Bivens</u> cases.'" <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1288 (11th Cir. 1998) (quoting <u>Abella v. Rubino</u>, 63 F.3d 1063, 1065 (11th Cir. 1995) (per curiam)).

To sustain his cause of action under 42 U.S.C. § 1983, the Plaintiff must establish two elements: (1) that he suffered a deprivation of a federal right secured by the Constitution or a federal statute; and (2) the individual committing the act or omission causing the deprivation acted under color of law. <u>Wideman v. Shallowford Community Hosp., Inc.</u>, 826 F.2d 1030, 1032 (11th Cir. 1987).

AO 72A
(Rev.8/82)

## The Plaintiff's Claims

The Plaintiff's claims arise out of his prior incarceration at the United States Penitentiary ("USP") in Atlanta, Georgia.  According to the Plaintiff, after his federal conviction, he was in the temporary custody of the United States Marshals Service ("USMS").  The USMS required the Plaintiff to receive a chest x-ray to determine whether the Plaintiff had tuberculosis.  The chest x-ray indicated that the Plaintiff did not have tuberculosis.  The Plaintiff was then taken to USP where officials wanted him to undergo a purified protein derivative ("PPD") test for tuberculosis.[1]  The Plaintiff refused the PPD test because he claims that (1) his religious beliefs do not permit him to inject foreign substances into his body and (2) he had a negative reaction to a previous PPD test.  The Plaintiff further explained to USP officials that, because he had recently had his chest x-rayed, he did not need a further test for tuberculosis.  The Plaintiff also claims that he offered to undergo another chest x-ray.

Despite his refusal, prison officials continued to insist that the Plaintiff take the PPD test because the test is mandatory for all inmates.

---

[1] The PPD test is a diagnostic test for tuberculosis in which a substance (tuberculin) is injected with a hypodermic needle into the skin of the test subject. The skin's reaction to the test indicates whether the test subject has been exposed to tuberculosis.

3

In one example of prison officials' efforts to require the Plaintiff to take the PPD test, he was scheduled for a transfer to the federal prison in Leavenworth, Kansas. After the Plaintiff requested that he not be transferred to Leavenworth because he is from Georgia, he claims that prison officials offered not to transfer him if he agreed to take the PPD test. The Plaintiff nonetheless continued to refuse to take the PPD test.

Finally, the Plaintiff claims that after repeated refusals, several prison guards and prison medical personnel approached the Plaintiff, put him in waist chains and forcibly administered the PPD test. The Plaintiff states that he did not physically resist the officials who were administering the test but informed them that he was protesting their involuntary administration of the test.

The Plaintiff claims that since being forced to take the PPD test, his "degenerative back condition has seemingly worsened . . . . His bones are aching . . . . [and] stiff [such that] he doesn't anticipate being able to maintain gainful employment."

## Discussion

In Washington v. Harper, 494 U.S. 210 (1990), the Supreme Court upheld a state regulation permitting officials forcibly to medicate a mentally-ill prisoner with

4

psychotropic drugs. While acknowledging that prison inmates enjoy a liberty interest in not being forced to take mind-altering drugs against their will, id. at 221-23, the Court recognized the "legitimacy, and the necessity, of considering the State's interests in prison safety and security," id. at 223. After balancing the state's interest in maintaining security in its prisons against the inmate's liberty interest, the Court concluded that the forced medication of a prisoner did not violate the Due Process Clause. Id. at 236 ("[W]e hold that the regulation ... is an accommodation between an inmate's liberty interest in avoiding the forced administration of antipsychotic drugs and the State's interests in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others.").

Since the Supreme Court issued its opinion in Harper, federal and state courts have balanced these interests comparably. See, e.g., Davis v. Agosto, 89 Fed. Appx. 523, 528 (6th Cir. 2004) (forced suturing of an open wound against inmate's will did not violate inmate's due process or Eighth Amendment rights); Parks v. McCoy, 35 Fed. Appx. 239, 241 (7th Cir. 2002) (inmate forced to take tuberculosis medication against his will based on a misdiagnosis did not state a constitutional claim for relief); McCormick v. Stalder, 105 F.3d 1059, 1062 (5th Cir. 1997) (due process does not prevent prison officials from forcing a prisoner to undergo treatment for tuberculosis);

5

Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992) (rejecting constitutional challenge to decision by prison officials to force-feed an inmate to preserve his health after a hunger strike); State ex rel. Schuetzle v. Vogel, 537 N.W.2d 358, 364 (N.D. 1995) (future medical cost of allowing diabetic prisoner to refuse treatment justified forced injections of insulin); c.f. Sconiers v. Jarvis, 458 F. Supp. 37, 40 (D.Kan.1978) ("[D]efendants had an affirmative constitutional duty to provide necessary medical treatment regardless of consent because intentional denial of medical treatment . . . constitutes cruel and unusual punishment.").

This Court recognizes that Harper mandates that a prisoner receiving a course psychtropic drug treatment receive certain process before the state is permitted to administer the treatment involuntarily.[2] However, the administration of psychotropic drugs over an open-ended period of time is a much more invasive, and potentially more dangerous, course of medical treatment then the one-time administration of a tuberculosis test, especially when considering that prison official have a legitimate interest in controlling the spread of tuberculosis. See McCormick, 105 F.3d at 1061 (noting that forcible treatment for tuberculosis differed from involuntary

---

[2] The state must find that the psychotropic medication is in the prisoner's medical interest, Harper, 494 U.S. at 227, the tribunal or panel that reviews a treating physician's decision to prescribe the forced medication must exercise impartial and independent judgment, id. at 222, 233, and the prisoner must be permitted to argue before a review tribunal that he does not need forced medication, id. at 233.

6

administration of psychotropic drugs because of prison's "compelling interest" in preventing spread of tuberculosis); see also id. (noting that Supreme Court upheld statute requiring all adults to receive a smallpox vaccination).

Indeed, in Washington v. Cambra, 1998 WL 840946 (9th Cir. 1998), the Ninth Circuit confronted a case in which an inmate claimed that the involuntary administration of a tuberculosis test by California prison officials constituted an unreasonable search and seizure, a violation of his liberty interests, excessive force, and deliberate indifference to his medical needs. Id. at *1. After noting that tuberculosis "is a highly contagious, highly dangerous disease" the court concluded that "detection and containment of [tuberculosis] is undeniably a legitimate penological goal" such that the forcible administration of the test (including the use of pepper spray) did not violate the constitutional rights of the inmate. Id.; see also Mack v. Campbell, 1991 WL 243569 (6th Cir. 1991) (administrative segregation for refusing tuberculosis screening test does not violate due process); Rhinehart v. Gomez, 1995 WL 364339 (N.D. Cal. 1995) (Washington v. Harper justifies prison policy of involuntary testing and treatment for tuberculosis); Karolis v. New Jersey Dept. of Corr., 935 F. Supp. 523, 527-28 (D.N.J. 1996) (involuntary administration of tuberculosis test to prisoner upheld against challenge under Religious Freedom

7

Restoration Act because there is a compelling interest in stopping the spread of tuberculosis in a prison).

This Court agrees with the rationale of the Ninth Circuit and the other courts that have held that states have a legitimate penological interest in controlling the spread of tuberculosis such that involuntary administration of a test for the disease does not offend the Constitution, and the Plaintiff has thus failed to state a claim for relief under 28 U.S.C. § 1331.

### Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the instant action be **DISMISSED** pursuant to 28 U.S.C. § 1915A.

**IT IS SO ORDERED,** this _1st_ day of October, 2007.


ROBERT L. VINING, JR.
SENIOR UNITED STATES DISTRICT JUDGE

8